# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| **DENNIS DILLEY,**<br><br>     Plaintiff,<br><br>vs.<br><br>**ACADEMY CREDIT, LLC; ACADEMY CREDIT TOOLS; ACADEMY CREDIT AND LAW; ACADEMY LEGAL SERVICES, PLLC dba ACADEMY LEGAL SERVICES; AAA ACADEMY LEGAL SERVICE, P.C.; ACADEMY LAW, P.C.; JAY G. BARTON; TODD WENDEL; DOUGLAS STOWELL; and GEOFF FLETCHER,**<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07CV301DAK |

   This matter is before the court on Plaintiff's Motion for Class Certification. The court held a hearing on the motion on September 25, 2008. At the hearing, Plaintiff was represented by Donald J. Winder, and Defendants, with the exception of Douglas Stowell[1], were represented by Mathew L. Lalli. The court has carefully considered the memoranda, exhibits, affidavits, and other materials submitted by the parties, as well as the facts and law relevant to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

---

  [1] Mr. Stowell was not present at the hearing, and Plaintiff indicated to the court that he has reached a settlement with Mr. Stowell. Mr. Stowell has not filed a memorandum relating to the present motion, and the court's reference to Defendants in this Order is not intended to include Mr. Stowell.

## BACKGROUND

Over a few day period, Plaintiff reviewed the websites of several different credit repair organizations. He decided to sign up to receive services from Academy Credit on May 7, 2004. Defendants provide credit repair services in all but a couple of states. Defendants provided service to 800 to 900 customers in 2004 and presently provides service to approximately 2100 customers. Dilley paid a $97 set up fee and then $37 per month, regardless of the services provided. Plaintiff testified that he could not recall any misrepresentations on Academy Credit's website, but he thought that some of the statements were confusing. Plaintiff attempted to cancel the service on December 4, 2004, but Defendant did not cancel the service until January 3, 2005.

Plaintiff alleges five claims under the Credit Repair Organizations Act, 15 U.S.C. § 1679 ("CROA"), and one claim under Washington state law. Plaintiff alleges that Defendants violated the CROA by charging an advance payment fee prior to performing any credit repair work, by failing to provide detailed descriptions of services to be provided, by failing to provide a separate written statement regarding consumer credit file rights, by failing to provide a cancellation statement, and by making untrue and misleading representations regarding the type and nature of the services they provided. Plaintiff also alleges that Defendants violated Washington state law, and likely other similar state laws, regarding the operation of credit repair organizations.

Plaintiff seeks to certify the following classes: "(a) All persons in the United States who engaged Defendants' services through their website and from whom the Defendants collected a "one-time set up fee" within five years prior to the date of the filing of this Complaint through the date of final judgment in this action; and (b) all persons in the United States who engaged Defendants' services through their website and who paid Defendants to perform credit repair

services at any time within five years prior to the date of the filing of this Complaint through the date of final judgment in this action, who did not receive from the Defendants properly formed and worded written contracts, notices of cancellation, and disclosures of rights."

## DISCUSSION

### Plaintiff's Motion for Class Certification

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites that must be met for a representative party to bring an action on behalf of all members of a class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). If Plaintiff demonstrates the prerequisites of Rule 23(a), then he must also satisfy one of the requirements of Rule 23(b) in order to maintain a class action. Fed. R. Civ. P. 23(b). The three requirements in Rule 23(b) include (1) whether the prosecution of separate actions by members of the class would produce inconsistent or dispositive results, (2) whether the defendant has acted or refused to act on grounds that apply generally to the class, and (3) whether the court finds questions of law or fact common to class members predominate over questions affecting only individual members and a class action is superior to other methods of adjudicating the controversy.

The party seeking certification bears the burden of establishing that certification is proper. *Ditty v. Check Rite Ltd.*, 182 F.R.D. 639, 641 (D. Utah 1998). For purposes of class certification, the well-pleaded facts of the Complaint are taken as true. *In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d 231, 236 (E.D.N.Y. 1998). In this case, the court has allowed the parties to

conduct discovery, which has also provided relevant evidence for the court's analysis. In determining class certification, the court's inquiry is limited to whether the requirements of Rule 23 have been met, rather than the underlying merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "When there is a question as to whether certification is appropriate, the Court should give the benefit of the doubt to approving the class." *In re Workers' Compensation*, 130 F.R.D. 99, 103 (D. Minn. 1990).

### 1. Rule 23(a) Prerequisites

#### A. Numerosity

The first prerequisite of Rule 23 requires the class to "be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no precise rule specifying how many class members are necessary to satisfy the numerosity requirement. But, "some general tendencies can be observed . . . numbers in excess of forty, particularly those exceeding one hundred, have sustained the requirement." *Weiss v. York Hosp.*, 745 F.2d 808 n.35 (3rd Cir. 1984). Courts have noted that "the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Robidoux v. Celant*, 987 F.2d 931, 936 (2d Cir. 1993). The plaintiff need not show that joinder of all members is impossible, only that it is impracticable. *Ditty*, 182 F.R.D. at 641. In addition, "[c]ourts have often used common sense assumptions to support a finding of numerosity." *Ditty*, 182 F.R.D. at 641.

Plaintiff asserts that the discovery conducted indicates that in 2004, Defendants provided service to 800 to 900 clients and they presently provide service to approximately 2100 clients. In addition, in discovery, Defendants have identified over 600 individuals who either complained about the service provided by Defendants or received refunds from Defendants. Plaintiff contends that because at least 600 people have contracted with Defendants for credit repair

4

services, he meets the numerosity requirement.

Defendants argue that Plaintiff must establish that the class exceeds 40 members by more than mere speculation. In *Iosello v. Lawrence*, 2005 WL 2007147 (N.D. Ill. Aug. 18, 2005), the court held that the plaintiff failed to establish numerosity in a purported class action against a credit repair company alleging violations of the CROA. *Id.* at *4. In that case, the plaintiff argued that because the defendant had 80,000 customers, and because the alleged CROA violations involved the defendants' standard contract and business procedures, it necessarily followed that the class exceeded forty members. *Id.* The court rejected this argument and held that the connection between the number of customers and the class size was too speculative. *Id.* The court stated that "plaintiff's speculative calculations as to the number of potential class members who may have viewed the same web pages on any given day or may have signed the same contract are insufficient to satisfy his burden of establishing numerosity." *Id.* Accordingly, the court concluded that it did not logically follow that the class exceeded forty members. *Id.*

Defendants argue that, as in *Iosello*, the connection Plaintiff proposes is simply too attenuated to meet the numerosity standard. At the very least, Defendants contend that Plaintiff should have to show that at least 40 people actually viewed the same contract or website presentation. Defendants claim that there have been multiple versions of the website, each of which has multiple pages.

The court agrees with *Iosella* that the number of customers is not determinative. But, unlike *Iosella*, there was only one contract used by Defendants in this case. The website is more difficult. Defendants claim that the website changed during the time period in question. Defendants' president, however, testified that only one form of disclosures were used during the class period. Therefore, while some of the contents on the website changed during the class

5

period, the contract and disclosures contained on the website did not. Many of Plaintiff's claims focus on the contract and disclosures. It is unclear to the court the extent to which the general representations or content of the website forms the basis of Plaintiff's misrepresentation claim. While Plaintiff has not presented evidence that would demonstrate that each of Defendants' clients were harmed by the contract or disclosures or misled by the website, the court concludes that, for purposes of class certification, the number of clients who signed the same contract and reviewed the same disclosures is sufficient to meet Rule 23(a)(1)'s numerosity requirement.

### B. Commonality

Rule 23's second prerequisite requires Plaintiff to show that there are quesitons of law or fact common to the entire class. Fed. R. Civ. P. 23(a)(2). "The threshold of commonality is not high . . . . [T]he rule requires only that resolution of the common questions affect all or a substantial number of the class." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Plaintiff contends that a case such as this involving standard documents and contracts presents a "classic case for treatment as a class action." *Haroco, Inc. v. American N'tl Bank & Trust Co.*, 121 F.R.D. 664, 669 (N.D. Ill. 1988); *See also Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995) (finding mailing of standard debt collection letter to all members of the proposed class satisfies the commonality requirement). Moreover, it is not necessary that all questions of law and fact be common–there need be only one issue common to all members of the class. *See National Broadcasting Co. v. Cleland*, 697 F. Supp. 1204, 1216 (N.D. Ga. 1988).

In this case, Plaintiff argues that common issues include Defendants' practice of collecting an advance one-time set up fee prior to performing any work, failing to provide detailed descriptions of services, deficient disclosures contained in the form contracts supplied by

Defendants, misleading representations regarding the services provided by Defendants, and whether the form contracts used by Defendant meet the CROA's contract requirements.

While there are several aspects of these claims that raise issues of individual harm, the court finds that at least one issue would be common to members of the class in order to meet Rule 23(a)(2)'s requirements.

### C.  Typicality

To meet Rule 23's typicality requirement, "'a class representative must possess the same interest and suffer the same injury as the class members.'" *Hillis v. Equifax Consumer Servs. Inc.*, 237 F.R.D. 491, 497 (N.D. Ga. 2006) (citation omitted).  "'[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large.'" *Id.* (citations omitted).  But differences in the specific damages sustained by individual class members do not preclude a showing of typicality, nor defeat class certification.  *See Maywalt v. Parker & Parsely Petroleum Co.*, 147 F.R.D. 51, 56 (S.D.N.Y. 1993).

In finding that the plaintiff had failed to show typicality, the *Iosello* court noted that the plaintiff failed to limit the class to consumers who entered into the same contract or viewed the same web pages as the plaintiff.  2005 WL 2007147 at *6.  For that reason, the court held that the plaintiffs "have not sufficiently established that the allegations of systematic disclosure violations, false and misleading representations, and payment violations apply to the proposed class of all Lexington consumers." *Id.*

Plaintiff asserts that his claims stem from the same set of operative facts as all other members of the class–namely, Defendants' business practices, form contracts, and website.  Plaintiff claims that each of these is in violation of the CROA.  Defendants used one form contract and one form of disclosures during the class period.  The only changes that occurred

7

during the class period were to the general format and representations on Defendants' website.

In *Hillis v. Equifax Consumer Servs, Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006), the court broke down the typicality question by type of claim. *Id.* at 498. The court found, and in fact Defendants did not challenge, typicality for the statutory safeguard claims under the CROA, such as failure to "provide written disclosures, contracts, and notices of cancellation rights." *Id.* Defendants in *Hillis* only challenged the plaintiff's typicality on the misrepresentation claims under the CROA. *Id.*

On the misrepresentation claims, the plaintiff testified that he did not recall seeing any of the representations. *Id.* The court rejected the argument that the plaintiff was required to show only that the defendants made, in general, misleading or untrue statements and that liability attaches without regard to whether or not the plaintiff saw or heard the statement. *Id.* at 498. Rather, the court reasoned that the assertion of only general statements raised "profound standing concerns." *Id.* The *Hillis* court concluded that without a showing that the plaintiff could recall seeing or hearing any of the representations cited in the complaint, the court "would have serious concerns regarding Plaintiff's ability to show an injury-in-fact sufficient to allow him to maintain a cause of action." *Id.* at 499. "In other words, if there was no evidence that Plaintiff saw or heard any of the representations alleged, there would be no injury to him, regardless of whether the representations may have been misleading or untrue to others." *Id.*

While the court found that the plaintiff had standing because his testimony indicated that he saw at least some of the representations, the court concluded that the plaintiff could not satisfy the typicality requirement for the misrepresentation claims because he would "be unable to prove the claims of absent class members who saw different representations." *Id.* "Typicality cannot be satisfied when a 'named plaintiff who proved his own claim would not necessarily have

8

proved anybody else's claim.'" *Id.* (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The *Hillis* court further noted that just because a general misrepresentation might be present, individual citizens do not have an enforcement right like the FTC --they need to rely on the misrepresentation to have a claim. *Id.* n.7.

In this case, there exists a similar divide between Plaintiff's claims regarding statutory safeguards and disclosures and his misrepresentation claims. While Plaintiff can demonstrate typicality with respect to his statutory safeguards claims based on the same contract disclosure and business practices, Plaintiff has failed to offer any evidence that he actually saw any of the alleged general misrepresentations or any of the allegedly deficient disclaimers, that those alleged misrepresentations of nondisclosures were material to his decision-making, or that the services promised were not provided to him. Significantly, Plaintiff testified that Academy Credit did not misrepresent the services that it provided him. He also testified that he did not rely on any representations made by Academy Credit regarding the services provided to him. Plaintiff cannot demonstrate typicality on a misrepresentations claim unless he can show, at least, that he saw the statements he contends were misleading and improper, and that he suffered actual damages as a result. Having failed to make such a showing, he has failed to show that his situation is typical of the other purported class members with respect to the misrepresentation claims. Moreover, the website Plaintiff viewed was not the same website viewed by all the purported class members. The court concludes, therefore, that the proposed class fails for lack of typicality.

### D. *Adequacy of Representation*

The final prerequisite under Rule 23(a) applies to both plaintiff and counsel and requires that the plaintiff demonstrate that as a class representative he will fairly and adequately protect

the interests of the class. *Hillis*, 237 F.R.D. at 499-500. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Achem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First class counsel must be 'qualified, experienced, and generally able' to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Defendants do not challenge the qualifications and experience of Plaintiff's counsel. Accordingly, the only issue under this element is whether there is a conflict between Plaintiff and other class members.

Plaintiff argues that the claims in this case do not lend themselves to conflicts between class members because all class members were given the same contracts and subject to the same business practices. Defendants, however, contend that Plaintiff's argument ignores the fact that Plaintiff has not offered any evidence that he can prevail on any of his claims as an individual because he has not shown that he saw or relied on any of the allegedly improper disclosures, that he saw or relied on any allegedly misleading statements, or that he has been injured or suffered any adverse effects as a result of the services he purchased from Academy Credit. Defendants argue that because of Plaintiff's testimony, he is not an adequate representative for the class.

In *Hillis*, the plaintiff also failed to present evidence that he had seen the allegedly misleading statements, and the court found that because of his lack of familiarity with the allegedly misleading statements the plaintiff was not an adequate representative. 237 F.R.D. at 502. Under those circumstances, the stated that it had "serious concerns about the interests of the absent class members who would be bound by any judgment in this case." *Id.* The court noted

that the "trier of fact would no doubt be influenced by whether Plaintiff believed the representations were misleading." *Id.* at 503.  This was true even if the court applied an objective standard to plaintiff's claims.  *Id.*   Because "Plaintiff's ability to recall and discuss the representations at issue [were] hazy at best," the court had "serious concerns as to whether the claims of so many should rise or fall with" that particular plaintiff.  *Id.*

As in *Hillis*, this court finds no conflict between the potential plaintiffs based only on differences with experience–for example, whether some improved their credit scores and some did not.  Similarly, the court agrees that a Plaintiff's lack of familiarity with the representations claimed to be misleading, creates a conflict with absent class members.  If a class representative with a weak case loses and individual class members with strong cases are bound by the negative outcome, an injustice will have occurred.  These concerns appear in this case as well.  As in *Hillis*, these purported class members should not be forced to risk losing claims because of the inadequacy of the representative.  *See* 237 F.R.D. at 503.  In sum, Plaintiff has not shown that he is an adequate representative for purported class members who may have seen and relied upon allegedly improper disclosures or misleading statements.

## 2. Rule 23(b) Requirements

After a plaintiff meets the requirements of Rule 23(a), he or she must meet one of the requirements under Rule 23(b).  In this case, Plaintiff seeks certification of the class under the third requirement of Rule 23(b).  Rule 23(b)(3) requires a showing that (1) issues common to the class predominate over those affecting individual class members; and (2) prosecuting the litigation as a class action is superior to other available methods of adjudicating the controversy.

### A.  *Predominance of Common Issues*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Hillis*, 237 F.R.D. at 503. "That common questions of law or fact predominate over individualized questions means that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *In re General Motors Corp.*, 2006 U.S. Dist. LEXIS 26603, at *43 n.29 (W.D. Okla. Apr. 19, 2006). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rustein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1234 (11th Cir. 2000). If the members of a proposed class "will need to present evidence that varies from member to member, then it is an individualized question." *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 625 (D.N.M. 2007). "In determining the predominance of common over individual questions, the critical test is 'whether there is "material variation"'" in the defendants' posture towards the different plaintiffs. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

In this case, Plaintiff alleges that Defendants statutory violations all stem from a common form contract and business practices. Plaintiff claims that the only issue that would be individual to each class member would be compensatory damages, but it is well established that individual damage issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *See In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d 231, 246-47 (E.D.N.Y. 1998).

The court agrees that the claims involving fees and detailed disclosures are based on the common contract and business practices, and meet the predominance requirement. But Plaintiff's misrepresentation claim fails to meet the predominance requirement for substantially the same reasons that it fails to meet the typicality requirement. Although Defendants' disclosures remained the same throughout the class period, the website as a whole changed. The

*Hillis* court emphasized that members of the proposed class had seen different websites and that "each class members' experience with the website is likely to differ significantly." 237 F.R.D. at 503.  Additionally, the putative class members accessed the defendants' websites in a variety of ways, at various times, and accessed different parts of the website.  As a result, the court concluded that "it will be very difficult to determine on a class-wide basis what representations [the class members] saw or read." *Id.* at 504.  The court further emphasized that even "determining whether each particular representation was misleading or untrue in violation of the CROA would further require the Court to engage in a highly individualized inquiry." *Id.* at 504.

Similarly, numerous individual questions are present here and are fatal to Plaintiff's misrepresentation claims.  Members of the proposed class saw different versions of Academy's website, accessed the website through different avenues, and each read or saw different representations.  Furthermore, each customer's interactions with Academy Credit's employees, and the statements made therein, were unique.  Each plaintiff also had his or her own unique credit situations and obtained unique services.  Because of the unique situation of each plaintiff, they would rely on representations that would vary depending on tier needs.  Plaintiff's testimony demonstrates that the individual experience of each class member will vary as to what representations were seen or viewed as misleading.  On the misrepresentation claim, the individual issues outnumber common questions.  Accordingly, Plaintiff's class certification of the misrepresentation claim fails under Rule 23(b)(3).

### 2. *Superior Means of Adjudication*

The second criterion under Rule 23(b)(3) is whether class certification is superior to other means of adjudicating the controversy.  This requirement "directs the court's attention to 'the relative advantages of a class action suit over whatever other forms of litigation might be

realistically available to plaintiffs." *Hillis*, 237 at 504 (citation omitted).  "The superiority requirement is grounded in the idea that the litigation is to be carried out as efficiently and as fairly as possible for all parties." *Id.*  "The matters pertinent to the findings [of predominance and superiority] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Amchem*, 521 U.S. at 615.

Plaintiff argues that here the individual class members have little incentive or ability to prosecute their claims against the Defendants individually because the amount of damages available to any one class member may be small in relation to the cost of suit.  Plaintiff claims that in matters such as this, where individual claimants are unlikely to bring suit, while the number of possible claimants is large, class action is the proper method of adjudication.

However, other courts addressing class certification motions for claims under the CROA do not agree with Plaintiff's position.  In *Helms v. Consumerinfo.com, Inc.*, 236 F.R.D. 561 (N.D. Ala. 2005), the court concluded that it could not certify a class under the CROA because it was "not desirable to litigate all of the proposed class claims in a single forum and the unnamed class members could indeed proceed on their own and achieve a more equitable result." *Id.* at 568.  The court found that certification of the class "would likely lead to damages that 'are grossly disproportionate to the conduct at issue.'" *Id.*  The *Hillis* court also found that class certification was inappropriate because it would "lead to damages that were grossly disproportionate to the conduct at issue" given that the plaintiff had demonstrated "little if any

14

actual damages." *Hillis*, 237 F.R.D. at 505.  Both courts relied on the Eleventh Circuit's instruction that a district court consider the defendant's conduct and harm to the class in relation to the potential damages that are sought.

> There are also several reasons courts commonly cite as to why it is particularly undesirable to litigate a class's claims in a single judicial forum.  Perhaps most importantly, we assess whether the potential damages available in a class action are grossly disproportionate to the conduct at issue.  Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to proceed.  Where defendants are being sued for statutory damages for unintentional acts under a strict liability standard, however, courts take a harder look at whether a defendant deserves to be subject to potentially immense liability . . . .  In cases where the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff, we are likely to find that individual suits, rather than a single class action, are the superior method of adjudication.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004).  The *Hillis* court emphasized, "Plaintiff's allegations amount to nothing more than unintentional technical violations of the CROA where the damages sought would be far out of proportion to the violations alleged."  *Id.*  Additionally, the court recognized that "every consumer who purchased Score Power-related services would receive a refund, even for things he or she in fact received such as credit reports and credit scores."  *Id.*

In *Braxton v. Farmer's Insurance Group*, 209 F.R.D. 654 (N.D. Ala. 2002) the court rejected an argument that aggregate damages for minor technical violations of the Fair Credit Reporting Act would be undue punishment.  The court found a class action to be the superior means of adjudicating the violations.  The *Braxton* court found that cases based on the strict liability provisions of the Truth In Lending Act were not applicable.  In *Hillis*, the court determined the CROA to be a strict liability statute more akin to TILA than FRCA.  237 F.R.D.

at 506 & n.12. Plaintiff argues that this determination is not well reasoned, but the court agrees with the reasoning of both *Hillis* and *Helms*.

In this case, Plaintiff seeks disgorgement of all fees paid to Academy by the purported class over a five year period in addition to punitive damages based on Defendants' deviations from CROA's disclosure requirements, fee requirements, and alleged misrepresentations. Plaintiff attempts to assert that the claims in this case are more egregious than the claims in *Helms* or *Hillis*. But the court concludes that the violations are relatively minor and, as noted, the strength of Plaintiff's misrepresentation claim is questionable given Plaintiff's testimony. Moreover, Plaintiff's only alleged damages is that it took longer to cancel the arrangement than he would have preferred–approximately one month. However, in his deposition, he did not contend that the delay in canceling the service caused him any injuries or loss of any kind. If Plaintiff is successful on his claims, and successful in certifying the class he proposes, the damages would likely approach or exceed $1 million even without considering the claim for punitive damages. This is grossly disproportionate in light of the fact that Plaintiff testified that he has suffered little, if any, damages. Whereas, the potential damages of a class action would likely put Defendants out of business.

In addition, the CROA provides an incentive for Plaintiff or other potential class members to proceed individually because it contains an attorneys' fees provision. The *Hillis* court noted that the CROA attorneys' fees provision "helps ensure that individual actions are practical even for those who seek relatively small amounts of money." 237 F.R.D. at 507.

Plaintiff, however, argues that the remedies provision of the CROA actually supports his position because it provides provisions relevant to class actions. The court does not dispute that there are instances in which a class action would be appropriate under the CROA. Both the

*Hillis* and *Helms* courts that there are certainly fraudulent scams "that would fall within the CROA's reach and also be sufficiently culpable to warrant large scale class punishment." *Hillis*, 237 F.R.D. at 506 n.11; *Helms*, 236 F.R.D. at 568-69.  As in those cases, however, the court does not find that the facts or allegations demonstrate that the Defendants are such an organization. The presence of class action provisions in the CROA does not convince the court that a class action is the superior method of adjudicating the present action.  Accordingly, the court denies Plaintiff's motion for class certification.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is DENIED.

DATED this 29th day of September, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge